# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SPECIAL COUNSEL<br>EX REL. DIANE RECTOR,<br>      Petitioner,<br><br>      v.<br><br>NATIONAL CREDIT UNION<br>  ADMINISTRATION,<br>      Agency. | DOCKET NUMBER<br>CB-1208-16-0012-U-1<br><br><br>DATE: January 29, 2016 |

# THIS STAY ORDER IS NONPRECEDENTIAL[1]

Malvina Winston, Esquire, Washington, D.C., for the petitioner.

Peter B. Broida, Esquire, Arlington, Virginia, for the relator.

Scott E. Schwartz, Esquire, Alexandria, Virginia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman

## ORDER ON STAY REQUEST

Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay for 45 days the agency's removal of Diane Rector

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

while OSC completes its investigation of the matter. For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

¶2 The following allegations of fact are set forth more fully in OSC's stay request. Ms. Rector has been a Supervisory Examiner for Training with the agency's Office of Small Credit Union Initiatives since August 30, 2012. In May 2014, Ms. Rector became aware that her second-line supervisor's son was consulting for the National Federation of Community Development Credit Unions for the purpose of helping member credit unions obtain grants administered by the agency. Ms. Rector was concerned that there would be a conflict of interest for her second-line supervisor to approve grants for members of the Federation because his son stood to benefit from such approvals. In June 2014, Ms. Rector expressed her concern to her second-line supervisor and suggested that he consult the agency's General Counsel.

¶3 Shortly thereafter, there was a change in the working relationship between Ms. Rector and her first- and second-line supervisors; her supervisors became less deferential to her judgment and began to scrutinize her work closely. In November 2014, Ms. Rector's first- and second-line supervisors issued her a lowered performance rating—"minimally successful," which was two grades lower than the "highly successful" rating she had received in 2012 and 2013.[2] On June 12, 2015, the agency issued Ms. Rector a letter of expectations regarding her performance, and on August 26, 2015, it placed her on a 90-day performance improvement plan (PIP). At the end of the PIP period, Ms. Rector's first line supervisor informed her that she had failed to raise her performance to an acceptable level and that her options were to resign, accept a demotion, or face

---

[2] After Ms. Rector filed an informal equal employment opportunity complaint, her performance rating was raised to the "fully successful" level.

removal.  On December 30, 2015, Ms. Rector's first-line supervisor proposed her removal for unacceptable performance.

¶4      On January 27, 2016, OSC filed the instant stay request, arguing that it has reasonable grounds to believe that Ms. Rector's pending removal was in reprisal for whistleblowing, a prohibited personnel practice under 5 U.S.C. § 2302(b)(8). OSC is requesting the Board to stay the proposed removal for 45 days, including the deadline for Ms. Rector to respond to the proposal.  The agency has filed a response, arguing that the deadline for Ms. Rector's response to the proposal should not be stayed, the deciding official should be allowed to proceed with a decision on the removal action, and any stay should be limited to the implementation of the removal decision.

## ANALYSIS

¶5      Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request any member of the Merit Systems Protection Board to order a stay of any personnel action for 45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.  Such a request shall be granted, unless the Board member determines that, under the facts and circumstances involved, such a stay would not be appropriate.  5 U.S.C. § 1214(b)(1)(A)(ii).  OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed.  *See Office of Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010).

¶6      As OSC states, it is a violation of 5 U.S.C. § 2302(b)(8) to threaten to take a personnel action because an employee made a protected whistleblowing disclosure.  OSC also asserts that, to establish a prima facie violation of this section, it must show that the employee engaged in protected activity and that the

activity was a contributing factor in the challenged action. *See Office of Special Counsel ex rel. Aran*, 115 M.S.P.R. 6, ¶ 7 (A prima facie violation of 5 U.S.C. § 2302(b)(8) exists where: (1) the employee made a disclosure of information that she reasonably believed evidenced any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; (2) the agency official or officials exercising personnel action authority had knowledge of the employee's disclosure; (3) there is a taking or failure to take, or a threat to take or failure to take, a personnel action; and (4) the protected disclosure was a contributing factor in the action taken.). The contributing factor element may be established through the knowledge/timing test of 5 U.S.C. § 1221(e)(1), i.e., that the official taking the personnel action knew of the disclosure, and the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.

¶7        Based on the facts set forth above, I find that OSC has reasonable grounds to believe that the agency proposed the Ms. Rector's removal in retaliation for a protected disclosure. It appears that Ms. Rector may have reasonably believed that her second-line supervisor violated or was in imminent danger of violating a law, rule, or regulation concerning Government employee ethics. *See Reid v. Merit Systems Protection Board*, 508 F.3d 674, 677 (Fed. Cir. 2007) (A reasonable belief that a violation of law is imminent is sufficient to confer Board jurisdiction over an individual right of action appeal; protected disclosures may thus include potential violations of law not carried out by the agency.). For instance, Ms. Rector's second-line supervisor may have violated or been in imminent danger of violating 5 C.F.R. §§ 2635.502 and .702(d), which require Federal employees to take precautions to avoid any appearance of partiality that may arise when the execution of their official duties could affect the financial interests of a relative.

¶8     It also appears that Ms. Rector's first-line supervisor, who proposed her removal, may have been aware of Ms. Rector's disclosure. OSC has not identified any concrete evidence to show that Ms. Rector's first-line supervisor was aware of the disclosure, but Ms. Rector's second-line supervisor appears to have been aware of it, and I find that OSC has made a reasonable inference based on the close working relationship between these two individuals that the first-line supervisor likely had actual or constructive knowledge of the disclosure through the second-line supervisor.

¶9     I further find that the timing of Ms. Rector's disclosure, approximately 18 months before her proposed removal, satisfies the timing component of the knowledge/timing test. *See Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (suspension proposed 18 months after the employee's protected disclosure occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action). This is especially so considering that the proposed removal was the culmination of a continuum of performance-based personnel actions that began shortly after the disclosure. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013).

¶10    The Board's regulations do not contemplate an agency response to an initial OSC stay request in original jurisdiction cases. *See* 5 C.F.R. §§ 1201.134-.136. I have nevertheless considered the agency's response. Under 5 U.S.C. § 1214(b)(1)(A), a Board member has the authority to order a stay of any personnel action if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice. A removal is a personnel action under 5 U.S.C. § 2302(a)(2)(A), and there is no question that a proposal to remove constitutes a threat to take a personnel action under section 2302(b)(8). The agency contends, however, that a proposed removal is not subject to the Board's stay authority. I disagree. Under the circumstances of this case, the proposed removal constitutes

"an action under chapter 75 of this title or other disciplinary or corrective action" under 5 U.S.C. § 2302(a)(2)(A)(iii) and therefore is a personnel action subject to the Board's stay authority. *See* 5 U.S.C. § 1214(b)(1)(A); *cf. Special Counsel v. Internal Revenue Service*, 65 M.S.P.R. 146 (1994) (granting a stay of the agency's placement of an employee on administrative leave while a notice of proposed removal was pending). Thus, the proposed removal is in the nature of a chapter 75 action and one falling within the coverage of 5 U.S.C. § 2302(a)(2)(A)(iii). *See Caddell v. Department of Justice*, 52 M.S.P.R. 529, 532 (1992) ("[O]ther" disciplinary or corrective action must be in the nature of a chapter 75 action to fall within the coverage of 5 U.S.C. § 2302(a)(2)(A)(iii)).

¶11      Moreover, a stay of Ms. Rector's proposed removal is necessary to achieve the purpose of a stay, that is, to preserve the status quo ante and minimize the adverse consequences of a prohibited personnel practice while the dispute is being resolved. *Special Counsel v. Department of Veterans Affairs*, 60 M.S.P.R. 40, 41 (1993). Although there may be some circumstances which would permit less than a complete return to the status quo, the agency has not suggested any here. The proposal notice is part and parcel of a chapter 75 action and is therefore encompassed in this stay order.

## ORDER

¶12      Based on the foregoing, I conclude that granting OSC's stay request is appropriate. Accordingly, a 45-day stay of Ms. Rector's proposed removal is GRANTED. The stay shall be in effect from January 29, 2016, through and including March 14, 2016. It is further ORDERED that:

(1) The proposed removal is stayed;

(2) Ms. Rector shall remain in her current position, at the same location, with the same duties and responsibilities, and at the same salary and grade level;

(3) The agency shall not effect any change in Ms. Rector's duties and responsibilities that is inconsistent with her salary or grade level or impose upon her any requirement that is not required of other employees of comparable position, salary, or grade level;

(4) The deciding official shall not issue a decision on the proposed removal;

(5) Within 10 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(6) Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board and the agency, together with any evidentiary support, on or before February 26, 2016. *See* 5 C.F.R. § 1201.136(b). Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be received by the Clerk of the Board, together with any evidentiary support, on or before March 4, 2016.


FOR THE BOARD: _____
                                     William D. Spencer
                                     Clerk of the Board

Washington, D.C.